BRIAN S. KABATECK, SBN 152054
(bsk@kbklawyers.com)
RICHARD L. KELLNER, SBN 171416
(rlk@kbklawyers.com)
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

JOHN M. RESTAINO, SBN 138268
(jrestaino@burgsimpson.com)
BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C.
40 Inverness Drive East
Englewood, Colorado 80112
Telephone:  (303) 792-5595
Facsimile:  (303) 708-0527

Attorneys for Plaintiff

**FILED**

**E-filing**

MAY 2 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

CV 08 2562

| | |
|---|---|
| DAVID HILARY, <br><br> Plaintiff, <br><br> vs. <br><br> GENERAL ELECTRIC COMPANY; GE HEALTHCARE, INC.; GE HEALTHCARE AS; BAYER HEALTHCARE PHARMACEUTICALS, INC. f/k/a/ BERLEX, INC. f/k/a BERLEX LABORATORIES, INC.; BAYER SCHERING PHARMA AG; BAYER AG; MALLINCKRODT, INC.; BRACCO DIAGNOSTICS INC; BRACCO RESEARCH USA, INC.; ALTANA PHARMA AG; and NYCOMED INTERNATIONAL | Case No. _____ <br><br> COMPLAINT <br><br> JURY TRIAL DEMAND  **PVT** <br><br> 1)    Strict Products Liability / Defective Manufacturing <br> 2)    Strict Products Liability / Design Defect <br> 3)    Strict Products Liability / Defect Due to Inadequate Warning <br> 4)    Strict Products Liability / Defect Due to Nonconformance with Representations <br> 5)    Strict Products Liability / Defect Due to Failure to |

COMPLAINT AND JURY DEMAND

| MANAGEMENT GmbH,<br><br>    Defendants. | Adequately Test<br>6)   Strict Liability in Tort<br>7)   Negligence - Highest Possible Duty of Care<br>8)   Negligence<br>9)   Breach of Express Warranty<br>10)   Breach of Implied Warranty<br>11)   Fraud/Misrepresentation<br>12)   Negligent Misrepresentation<br>13)   Violation of Business & Professions Code § 17200<br>14)   Violation of Business & Professions Code § 17500 |
| --- | --- |

Plaintiff, David Hilary, by and through his counsel, BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C., and for his Complaint against Defendants, alleges as follows:

## PARTIES AND JURISDICTION

1.    Plaintiff, David Hilary, is a resident and citizen of Santa Clara, California.

2.    All events in question in this suit took place in the Northern District of California.

3.    Plaintiff alleges an amount in controversy in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs. Defendant General Electric Company is a New York Corporation with its principal place of business at 3135 Easton Turnpike, Fairfield, Connecticut 06431. Defendant General Electric Company is a resident of both New York and Connecticut. Defendant General Electric Company is the parent company of Defendant GE Healthcare AS and GE Healthcare, Inc.

4.    Omniscan, one of the products in question in this suit, is identified by General Electric Company in its packaging that it is a product of "GE Healthcare," which is a unit/division of General Electric Company. "GE Healthcare" is

COMPLAINT AND JURY DEMAND

1  prominently identified on the Omniscan packaging/prescribing information,
2  alongside the "GE" monogram. Omniscan is identified as a trademark of GE
3  Healthcare. "GE" and the GE monogram are trademarks of the General Electric
4  Company. The GE Healthcare website, which includes detailed product
5  information concerning Omniscan, is copyrighted by General Electric Company.
6  General Electric Company does business as GE Healthcare, including the business
7  of designing, licensing, manufacturing, distributing, selling, marketing, and/or
8  introducing into United States interstate commerce, the drug Omniscan.

9      5.    At all times relevant, Defendant General Electric Company, and/or its
10  corporate predecessors, was engaged in the business of designing, licensing,
11  manufacturing, distributing, selling, marketing, and/or introducing into the stream
12  of commerce, directly and indirectly through third parties or related entities, the
13  drug Omniscan.

14      6.    Defendant GE Healthcare AS is a Norwegian corporation with its
15  principal place of business in the Kingdom of Norway. Defendant GE Healthcare
16  AS is a subsidiary of General Electric Company. Omniscan's package
17  insert/prescribing information identifies the putative manufacturer of Omniscan as
18  GE Healthcare AS.

19      7.    At all times relevant, Defendant GE Healthcare AS, and/or its
20  corporate predecessors, was engaged in the business of designing, licensing,
21  manufacturing, distributing, selling, marketing, and/or introducing into the United
22  States interstate commerce, directly and indirectly through third parties or related
23  entities, the drug Omniscan.

24      8.    Defendant GE Healthcare, Inc. is a Delaware corporation with its
25  principal place of business at 101 Carnegie Center, Princeton, New Jersey.
26  Defendant GE Healthcare, Inc. is a resident and citizen of both Delaware and New
27  Jersey. Defendant GE Healthcare, Inc. is a subsidiary of General Electric

28

COMPLAINT AND JURY DEMAND

1  Company.  Omniscan's package insert identifies the putative distributor of
2  Omniscan as GE Healthcare, Inc.

3        9.    At all times relevant, Defendant GE Healthcare, Inc., and/or its
4  corporate predecessors, was engaged in the business of designing, licensing,
5  manufacturing, distributing, selling, marketing, and/or introducing into interstate
6  commerce, directly and indirectly through third parties or related entities, the drug
7  Omniscan.

8        10.    Upon information and belief and at the relevant times, Omniscan was
9  distributed and sold in the United States by GE Healthcare, Inc. and was
10  manufactured by GE Healthcare AS.

11        11.    Defendants General Electric Company, GE Healthcare, Inc., and GE
12  Healthcare AS will be collectively referred to in this Complaint as the "GE
13  Defendants."

14        12.    Defendant Bayer Healthcare Pharmaceuticals, Inc. f/k/a/ Berlex, Inc.
15  f/k/a Berlex Laboratories, Inc. is a Delaware corporation with its principal place of
16  business at 6 West Belt, Wayne, New Jersey.  Defendant Bayer Healthcare
17  Pharmaceuticals, Inc. is a resident and citizen of both Delaware and New Jersey.
18  Defendant Bayer Healthcare Pharmaceuticals, Inc. f/k/a/ Berlex, Inc. f/k/a Berlex
19  Laboratories, Inc. is a division of Bayer AG.

20        13.    On April 4, 2007, Berlex, Inc. f/k/a Berlex Laboratories, Inc. changed
21  its name to Bayer Healthcare Pharmaceuticals, Inc.  Therefore, defendant Bayer
22  Healthcare Pharmaceuticals, Inc. is a corporate successor to Berlex, Inc. f/k/a
23  Berlex Laboratories, Inc. and, as such, is obligated for its predecessor's liabilities.

24        14.    At all times relevant, Defendant Bayer Healthcare Pharmaceuticals,
25  Inc., and/or its corporate predecessors, was engaged in the business of designing,
26  licensing, manufacturing, distributing, selling, marketing, and/or introducing into
27  the stream of commerce, directly and indirectly through third parties or related
28  entities, the prescription drug Magnevist (gadopentetate dimeglumine).

COMPLAINT AND JURY DEMAND

15.    Bayer Schering Pharma AG is a foreign company domiciled in Germany.

16.    Bayer Schering Pharma AG is a corporate successor to Schering AG. Schering AG was renamed Bayer Schering Pharma AG effective December 29, 2006. At all times relevant, Defendant Bayer Schering Pharma AG f/k/a/ Schering AG and/or its corporate predecessors, was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into the stream of commerce, directly and indirectly through third parties or related entities, the prescription drug Magnevist (gadopentetate dimeglumine).

17.    Defendant Bayer AG is a company domiciled in Germany and is the parent/holding company of both Bayer Healthcare Pharmaceuticals, Inc. and Bayer Schering Pharma AG.

18.    Defendants Bayer Healthcare Pharmaceuticals, Inc., Bayer AG, Bayer Schering Pharma AG will be collectively referred to in this Complaint as the "Bayer Defendants."

19.    Defendant Bayer Healthcare Pharmaceuticals, Inc. is a corporate successor to Berlex Laboratories, Inc. (Berlex) and, as such, is obligated for its predecessor's liabilities. Berlex was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription drug Magnevist (gadopentetate dimeglumine).

20.    At all times relevant, the Bayer Defendants were engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, and into the State of California, either directly or indirectly through third parties or related entities, the diagnostic agent Magnevist (gadopentetate dimeglumine).

21.    Defendant Mallinckrodt, Inc. ("Defendant Mallinckrodt") is a Delaware corporation with its principal place of business at 675 McDonnell Blvd.,

COMPLAINT AND JURY DEMAND

5

1  St. Louis, Missouri.  Defendant Mallinckrodt is a resident and citizen of both

2  Delaware and Missouri.  Defendant Mallinckrodt is a subsidiary of Tyco

3  Healthcare Group LP.

4       22.    At all times relevant, Defendant Mallinckrodt was engaged in the

5  business of designing, licensing, manufacturing, distributing, selling, marketing,

6  and/or introducing into interstate commerce, either directly or indirectly through

7  third parties or related entities, the diagnostic agent Optimark.

8       23.    Defendant Bracco Diagnostics Inc. is a Delaware corporation with its

9  principal place of business in Princeton, New Jersey.

10       24.    Upon information and belief, at all times relevant, Defendant Bracco

11  Diagnostics Inc. was engaged in the business of designing, licensing,

12  manufacturing, distributing, selling, marketing, and/or introducing into interstate

13  commerce, either directly or indirectly through third parties or related entities, the

14  diagnostic agents MultiHance and ProHance.

15       25.    Upon information and belief, Defendant Bracco Research USA, Inc. is

16  a Delaware corporation, with its principal place of business in Princeton, New

17  Jersey.

18       26.    Upon information and belief, at all times relevant, Defendant Bracco

19  Research USA, Inc. was engaged in the business of designing, licensing,

20  manufacturing, distributing, selling, marketing, and/or introducing into interstate

21  commerce, either directly or indirectly through third parties or related entities, the

22  diagnostic agents MultiHance and ProHance.

23       27.    Upon information and belief, Defendant ALTANA Pharma AG is a

24  German company with its principal place of business in Germany.  Defendant

25  ALTANA Pharma AG manufactured MultiHance and/or ProHance for Bracco

26  Diagnostics Inc.

27       28.    Upon information and belief, at all times relevant, Defendant

28  ALTANA Pharma AG was engaged in the business of designing, licensing,

1  manufacturing, distributing, selling, marketing, and/or introducing into interstate
2  commerce, either directly or indirectly through third parties or related entities, the
3  diagnostic agents MultiHance and ProHance.

4      29.   Defendant Nycomed International Management GmbH ("Nycomed")
5  is a Swiss company domiciled in Switzerland. Defendant Nycomed bought
6  ALTANA Pharma AG in 2006. Defendant Nycomed is corporate successor to
7  ALTANA Pharma AG and, as such, is obligated for its predecessor's liabilities.

8      30.   Defendants Bracco Diagnostics Inc., Bracco Research USA, Inc.,
9  ALTANA Pharma AG and Nycomed will be collectively referred to in this
10  Complaint and Jury Demand as the "Bracco Defendants."

11      31.   At all times relevant, the Bracco Defendants were engaged in the
12  business of designing, licensing, manufacturing, distributing, selling, marketing,
13  and/or introducing into interstate commerce, either directly or indirectly through
14  third parties or related entities, the diagnostic agents MultiHance and ProHance.

15      32.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §
16  1332 because there is complete diversity of citizenship between the parties, and the
17  amount in controversy exceeds $75,000.00, exclusive of interest and costs.

18      33.   This Court has personal jurisdiction over Defendants consistent with
19  the laws of the State of California and the United States Constitution because
20  Defendants caused tortious injury in the State of California by an act or omission
21  outside the State of California by virtue of Defendants' regularly conducted
22  business in the State of California from which they derive substantial revenue.

23      34.   Venue in this district is appropriate under 28 U.S.C. § 1391 because a
24  substantial part of the events giving rise to this claim occurred in the district as
25  Plaintiff David Hilary was administered the offending contrast dye in this district
26  and suffered injury in this district.

27
28

COMPLAINT AND JURY DEMAND

## GENERAL ALLEGATIONS

35.     Magnevist is an injectable paramagnetic contrast agent used for magnetic resonance imaging and arteriography.  It is a patented, proprietary formulation that contains the metal gadolinium which is highly toxic in its free state.  Magnevist, the chemical name of which is gadopentetate dimeglumine, was represented by the Bayer Defendants to be safely and effectively indicated for intravenous administration to facilitate the visualization of cranial and spinal anatomy as well as tumors, lesions, and immediately adjacent areas.  Magnevist was further represented by the Bayer Defendants to be superior to two of its competitors (Omniscan and OptiMARK) in its thermodynamic and conditional stability, its low volume of excess chelate, and its ability to prevent the release of gadolinium.

36.     Berlex obtained FDA approval of its New Drug Application (App. No. 019596) for Magnevist (gadopentetate dimeglumine) on June 2, 1988.

37.     In 2006, Bayer AG, which has its legal domicile in Berlin, completed its acquisition of Schering, AG.  Berlex was a U.S. affiliate of Schering, AG. Bayer AG is a holding company that owns and operates Defendants Bayer Healthcare LLC and Bayer Healthcare Pharmaceuticals, Inc.

38.     Magnevist (gadopentetate dimeglumine) is cleared from the body solely by glomerular filtration in the kidneys.  As a result, it has a prolonged half-life in patients with renal insufficiency and who, therefore, are at increased risk for adverse health effects in connection with Magnevist (gadopentetate dimeglumine) administration.

39.     At all times relevant hereto, the Bayer Defendants knew, or should have known, about the significant health risk of Magnevist (gadopentetate dimeglumine) administration to patients with renal insufficiency including, but not limited to, the risk of nephrogenic fibrosis in the skin and other body organs. The Bayer Defendants knew, or should have known, of the need to prevent the

1  gadolinium contained in its product from becoming free in the body of humans

2  injected with Magnevist through the use of, among other things, proper design,

3  testing, and manufacturing.

4      40.    At all times relevant hereto, the Bayer Defendants knew, or should

5  have known, that there were safer, alternative designs for paramagnetic contrast

6  agents that would prevent or minimize the risk of gadolinium becoming free in the

7  bodies of humans.

8      41.    Nephrogenic Systemic Fibrosis (NSF), also known as Nephrogenic

9  Fibrosing Dermopathy (NFD), has been reported in medical literature since 2000.

10     42.    It has always been the case that this clinical entity now known as

11  NSF/NFD develops in patients with renal insufficiency who have been given an

12  injection of gadolinium-based contrast agent such as Magnevist (gadopentetate

13  dimeglumine).

14     43.    Magnevist (gadopentetate dimeglumine) is chemically distinct from

15  other gadolinium-based contrast agents in that it more easily permits the release of

16  toxic free gadolinium under expected physiologic conditions in patients with renal

17  insufficiency who received it.

18     44.    At all times relevant hereto, the Bayer Defendants knew, or should

19  have known, that its product, Magnevist, was not reasonably fit, suitable or safe for

20  its intended purpose, and specifically, that it was defective and unsafe for use in

21  patients with renal insufficiency such as the Plaintiff, David Hilary, and knew, or

22  should have known, that the gadolinium contained in its product is highly toxic to

23  humans. Further, at all times relevant hereto, the Bayer Defendants knew, or

24  should have known, about the significant health risk of Magnevist administration

25  to patients with renal insufficiency, including, but not limited to, the risk of toxic

26  gadolinium being released into the bodies of those patients, causing severe

27  physical injury.

28

45.    Omniscan is an injectable paramagnetic contrast agent for magnetic resonance imaging and arteriography.  It contains the metal gadolinium which is highly toxic in its free state.  Omniscan, the chemical name of which is gadolinium diethylenetriamine pentaacetic acid bismethylamide (gadodiamide), is represented by the GE Defendants to be safely and effectively indicated for intravenous administration to facilitate the visualization of lesions with abnormal vascularity.

46.    Omniscan is cleared from the body solely by glomerular filtration in the kidneys.  As a result, it has a prolonged half-life in patients with renal insufficiency and who, therefore, are at increased risk for adverse health effects in connection with Omniscan administration.

47.    Omniscan was originally developed by Salutar, Inc. which then conducted pre-clinical testing with Sterling Winthrop and Daiichi Pharmaceuticals. Salutar was subsequently acquired by Nycomed.  In 1994, Nycomed acquired Sterling Winthrop's diagnostic imaging business.

48.    In 1997, Nycomed acquired Amersham International plc, and the new company was named Amersham plc, which then held the rights to Omniscan.

49.    In 2004, General Electric Company acquired Amersham plc and the rights to Omniscan.  At the time of the acquisition, Amersham plc was the ultimate parent company of Amersham Health AS, which manufactured the Omniscan that was distributed and sold in the United States, and Amersham Health Inc., which distributed and sold Omniscan in the United States.  In 2006, Amersham Health AS was renamed GE Healthcare AS, and Amersham Health, Inc. was renamed GE Healthcare, Inc.

50.    Defendants General Electric Company, GE Healthcare AS, and GE Healthcare, Inc. are corporate successors to Amersham plc and its related entities, and, as such, are obligated for their predecessor's liabilities.  Amersham plc, either itself or by and through its subsidiaries, was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into

1  United States interstate commerce, directly and indirectly through third parties or

2  related entities, the drug Omniscan.

3      51.    Optimark is an injectable paramagnetic contrast agent used for

4  magnetic resonance imaging and arteriography. It contains the metal gadolinium,

5  which is highly toxic in its free state. Optimark, the chemical name of which is

6  gadolinium diethylenetriamine pentaacetic acid bismethoxyethylamide

7  (gadoversetamide), is represented by the Defendant Mallinckrodt to be safely and

8  effectively indicated for intravenous administration to facilitate the visualization of

9  lesions with abnormal vascularity.

10     52.    MultiHance and ProHance are injectable paramagnetic contrast agents

11  for magnetic resonance imaging and arteriography. They contain the metal

12  gadolinium, which is highly toxic in its free state. Upon information and belief,

13  MultiHance and ProHance were represented by the Bracco Defendants to be safely

14  and effectively indicated for intravenous administration to facilitate visualization

15  of lesions with abnormal blood brain barrier or abnormal vascularity of the brain,

16  spine, and associated tissues.

17     53.    At all times relevant hereto, the Defendants knew, or should have

18  known, about the significant health risk of their products' administration to

19  patients with renal insufficiency, including, but not limited to, the risk of

20  nephrogenic fibrosis in the skin and other body organs. At all times relevant

21  hereto, Defendants knew, or should have known, that, in its free state, gadolinium

22  is highly toxic, harmful and dangerous to humans, and causes severe physical

23  injury and knew, or should have known, of the need to prevent the gadolinium

24  contained in its product from becoming free in the body of humans injected with

25  Omniscan, Magnevist, Optimark, and/or, upon information and belief, MultiHance

26  and/or ProHance, through the use of, among other things, proper design, testing,

27  and manufacturing.

28

54.    At all relevant times, Defendants knew, or should have known, that there were safer, alternative designs for paramagnetic contrast agents that would prevent or minimize the risk of gadolinium becoming free in the bodies of humans and knew, or should have known, of safer, alternative designs for imaging systems, like those used by other leading MRI systems manufacturers, that do not use gadolinium based contrast agents, which would provide a safer imaging alternative for the public, including David Hilary.

55.    At all times relevant hereto, Defendants knew, or should have known, that their respective products, Omniscan, Magnevist, Optimark and/or upon information and belief, MultiHance and/or ProHance, were not reasonably fit, suitable or safe for their intended purpose and, specifically, that they were defective and unsafe for use in patients with renal insufficiency, such as David Hilary, and knew, or should have known, that the gadolinium contained in its product is highly toxic to humans, and knew, or should have known, about the significant health risk of administration of these products to patients with renal insufficiency, including, but not limited to, the risk of toxic gadolinium being released into the bodies of those patients, causing severe physical injury.

56.    David Hilary was exposed to the gadolinium containing contrast dyes Omniscan and upon information and belief, Magnevist, Optimark, ProHance and/or MultiHance, during imaging procedures at Santa Clara Regional Medical Center in 2003 and 2004.

57.    After being administered Omniscan and, upon information and belief, Magnevist, Optimark, MultiHance and/or ProHance, gadolinium was released into his body. David Hilary began experiencing symptoms of Nephrogenic Systemic Fibrosis (NSF), also known as Nephrogenic Fibrosing Dermopathy (NFD), after and because of these administrations.

58.    NSF/NFD develops only in patients with renal insufficiency, such as David Hilary, who have been given an injection of a gadolinium-based contrast

COMPLAINT AND JURY DEMAND

1  agent such as Magnevist, Omniscan, Optimark, and/or upon information and
2  belief, MultiHance and/or ProHance.

3      59.    NSF/NFD is predominantly characterized by discoloration,
4  thickening, tightening, and swelling of the skin within weeks after receiving a
5  gadolinium-based contrast injection such as Magnevist, Omniscan, Optimark
6  and/or upon information and belief, MultiHance and/or ProHance.  These
7  symptoms can occur weeks or months after a person is administered these dyes.
8  These fibrotic and edematous changes produce muscular weakness and inhibit
9  flexion and extension of joints, resulting in contractures.  NSF/NFD often
10  progresses to painful inhibition of the ability to use the arms, legs, hands, feet, and
11  other joints.  The skin changes that begin as darkened patches or plaques progress
12  to a "woody" texture and are accompanied by burning, itching, or severe pain in
13  the areas of involvement.  NSF/NFD also progresses to a fibrotic or scarring
14  condition of other body organs such as the lungs, heart, liver, and musculature, and
15  that can inhibit their ability to function properly and may lead to death.  NSF/NFD
16  is a progressive disease as to which there is no known cure.

17      60.    The GE, Bayer, Mallinckrodt, and upon information and belief,
18  Bracco Defendants consistently failed to warn consumers and/or their health care
19  providers that severe, even fatal, injuries could result when their dyes are
20  administered to patients with renal insufficiency.

21      61.    During the years that the Defendants manufactured, marketed, and
22  sold their respective products, there were numerous case reports, studies,
23  assessments, papers, and other relevant experimental and clinical data that have
24  described and/or demonstrated dissociation and transmetallation in connection with
25  the use of certain gadolinium-based contrast agents. Despite this, the GE, Bayer,
26  Mallinckrodt and, upon information and belief, Bracco Defendants repeatedly
27  failed to adequately revise their package inserts, Material Safety Data Sheets, and
28

1    other product-related literature, and to conduct appropriate post-marketing
2    communications in order to convey adequate warnings.

3        62.    The GE, Bayer, Mallinckrodt, and upon information and belief,
4    Bracco Defendants repeatedly and consistently failed to advise consumers and/or
5    their health care providers of the propensity of their products to undergo
6    dissociation and transmetallation in vivo and of the causal relationship between
7    certain gadolinium contrast dye and the development of NSF/NFD in patients with
8    renal insufficiency.

9        63.    David Hilary suffers from debilitating and worsening fibrotic changes
10   to his body as a result of contracting NSF/NFD.

11       64.    As a direct and proximate result of being administered Omniscan and,
12   upon information and belief, Magnevist, Optimark, MultiHance, and/or ProHance,
13   David Hilary suffers serious, progressive, permanent, incurable, and potentially
14   fatal injuries.

15       65.    As a direct and proximate result of being administered Omniscan, and
16   upon information and belief, Magnevist, Optimark, MultiHance, and/or ProHance,
17   David Hilary suffered, and continues to suffer, significant harm, conscious pain
18   and suffering, physical injury, bodily impairment, disfigurement and scarring,
19   including, but not limited to, suffering from NSF/NFD, amputation procedures,
20   and systemic manifestations. David Hilary further suffered and continues to suffer
21   significant mental anguish and emotional distress, physical limitations, pain,
22   injury, damages, and harm. David Hilary has also incurred, and continues to incur,
23   medical expenses and other economic harm as a direct and proximate result of
24   being administered Omniscan, and upon information and belief, Magnevist,
25   Optimark, MultiHance, and/or ProHance.

26       66.    As a direct and proximate result of being administered gadolinium
27   contrast dye, Plaintiff David Hilary has incurred medical expenses, life care
28   expenses, loss of income, loss of past, present and future earning capacity and

other economic harm and has further experienced limited mobility, dramatic life changes, severe and debilitating physical and emotional pain and distress, disfigurement and other non-economic harm.

67.    The Defendants, upon information and belief, have, or may have, failed to comply with all federal standards and requirements applicable to the sale of their prescription drugs, Omniscan, Magnevist, Optimark, MultiHance and ProHance, including, but not limited to, one or more of the following violations:

a.    The Defendants' prescription drugs are adulterated pursuant to 21 U.S.C. § 351 because, among other things, they fail to meet established performance standards, and/or the methods, facilities, or controls used for their manufacture, packing, storage or installation are not in conformity with federal requirements.  See, 21 U.S.C. §351.

b.    The Defendants' prescription drugs are adulterated pursuant to 21 U.S.C. § 351 because, among other things, their strength differs from or their quality or purity falls below the standard set forth in the official compendium for the drugs, and such deviation is not plainly stated on their labels.

c.    The Defendants' prescription drugs are misbranded pursuant to 21 U.S.C. §352 because, among other things, their labeling is false or misleading.

d.    The Defendants' prescription drugs are misbranded pursuant to 21 U.S.C. §352 because words, statements, or other information required by or under authority of chapter 21 U.S.C. § 352 are not prominently placed thereon with such conspicuousness and in such terms as to render them likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

e.    The Defendants' prescription drugs are misbranded pursuant to 21 U.S.C. §352 because the labeling does not bear adequate directions for

use, and/or the labeling does not bear adequate warnings against use in those pathological conditions or by children where their use may be dangerous to health or against unsafe dosage or methods or duration of administration or application in such manner and form as are necessary for the protection of users.

f.    The Defendants' prescription drugs are misbranded pursuant to 21 U.S.C. §352 because they are dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

g.    The Defendants' prescription drugs do not contain adequate directions for use pursuant to 21 CFR § 201.5, because, among other reasons, of omission, in whole or in part, or incorrect specification of (a) statements of all conditions, purposes, or uses for which they are intended, including conditions, purposes, or uses for which they are prescribed, recommended or suggested in their oral, written, printed, or graphic advertising, and conditions, purposes, or uses for which the drugs are commonly used, (b) quantity of dose, including usual quantities for each of the uses for which they are intended and usual quantities for persons of different ages and different physical conditions, (c) frequency of administration or application, (d) duration or administration or application, and/or (d) route or method of administration or application.

h.    The Defendants violated 21 CFR § 201.56 because the labeling was not informative and accurate.

i.    The Defendants' prescription drugs are misbranded pursuant to 21 CFR § 201.56 because the labeling was not updated as new information became available that caused the labeling to become inaccurate, false, or misleading.

COMPLAINT AND JURY DEMAND

16

j.      The Defendants violated 21 CFR § 201.57 by failing to provide information that is important to the safe and effective use of the drugs including degree and rate of absorption, pathways of biotransformation, percentage of dosage as unchanged drug and metabolites, rate or half-time of elimination, concentration in body fluids associated with therapeutic and/or toxic effects, degree of binding to plasma proteins, and/or the degree of update by a particular organ.

k.      The Defendants violated 21 CFR § 201.57 because evidence was only available to support the safety and effectiveness of the drugs in selected subgroups of the larger population with a disease, syndrome, or symptom and the labeling failed to describe the available evidence and state the limitations of usefulness of the drugs.

l.      The Defendants violated 21 CFR § 201.57 because they failed to identify specific tests needed for selection or monitoring of patients who took the prescription drugs.

m.      The Defendants violated 21 CFR § 201.57 because the safety considerations regarding the prescription drugs are such that the drugs should be reserved for certain situations, and the Defendants failed to state such information.

n.      The Defendants' prescription drugs are mislabeled pursuant to 21 CFR § 201.57 because the labeling fails to describe serious adverse reactions and potential safety hazards, limitations in use imposed by them, and steps that should be taken if they occur.

o.      The Defendants' prescription drugs are mislabeled pursuant to 21 CFR § 201.57 because the labeling was not revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with the drug.

COMPLAINT AND JURY DEMAND

17

p.      The Defendants violated 21 CFR § 201.57 because the labeling failed to list the adverse reactions that occur with the prescription drugs and other drugs in the same pharmacologically active and chemically related class.

q.      The Defendants violated 21 CFR § 201.57 because the possibility that a patient could develop NSF/NFD is significantly more severe than the other reactions listed in the adverse reactions, and, yet, the Defendants failed to list the development of NSF/NFD before the other adverse reactions on the labeling of the prescription drugs.

r.      The Defendants' prescription drugs are mislabeled pursuant to 21 CFR § 201.57 because the labeling does not state the recommended usual dose, the usual dosage range, and, if appropriate, an upper limit beyond which safety and effectiveness have not been established.

s.      The Defendants' prescription drugs violate 21 CFR § 210.1 because the process by which they are manufactured, processed, and/or held fails to meet the minimum current good manufacturing practice of methods to be used in, and the facilities and controls to be used for, the manufacture, packing, or holding of a drug to assure that they meet the requirements as to safety and have the identity and strength and meets the quality and purity characteristic that they purport or are represented to possess.

t.      The Defendants' prescription drugs violate 21 CFR § 210.122 because the labeling and packaging materials do not meet the appropriate specifications.

u.      The Defendants' prescription drugs violate 21 CFR § 211.165 because the test methods employed by the Defendants are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity, and/or reproducibility of test methods have not been properly established and documented.

COMPLAINT AND JURY DEMAND

18

v.    The Defendants' prescription drugs violate 21 CFR § 211.165 in that the prescription drugs fail to meet established standards or specifications and any other relevant quality control criteria.

w.    The Defendants' prescription drugs violate 21 CFR § 211.198 because the written procedures describing the handling of all written and oral complaints regarding the prescription drugs were not followed.

x.    The Defendants' prescription drugs violate 21 CFR § 310.303 in that the prescription drugs are not safe and effective for their intended use.

y.    The Defendants violated 21 CFR § 310.303 because the Defendants failed to establish and maintain records and make reports related to clinical experience or other data or information necessary to make or facilitate a determination of whether there are or may be grounds for suspending or withdrawing approval of the application to the FDA.

z.    The Defendants violated 21 CFR §§310.305 and 314.80 by failing to report adverse events associated with the prescription drugs as soon as possible or at least within 15 days of the initial receipt by the Defendants of the adverse drug experience.

aa.    The Defendants violated 21 CFR §§310.305 and 314.80 by failing to conduct an investigation of each adverse event associated with the prescription drugs and evaluating the cause of the adverse event.

bb.    The Defendants violated 21 CFR §§310.305 and 314.80 by failing to promptly investigate all serious, unexpected adverse drug experiences and submit follow-up reports within the prescribed 15 calendar days of receipt of new information or as requested by the FDA.

cc.    The Defendants violated 21 CFR §§310.305 and 314.80 by failing to keep records of the unsuccessful steps taken to seek

additional information regarding serious, unexpected adverse drug experiences.

dd.    The Defendants violated 21 CFR §§310.305 and 314.80 by failing to identify the reports they submitted properly, such as by labeling them as "15-day Alert report," or "15-day Alert report follow-up."

ee.    The Defendants violated 21 CFR § 312.32 because they failed to review all information relevant to the safety of the prescription drugs or otherwise received by the Defendants from sources, foreign or domestic, including information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that have not already been previously reported to the agency by the sponsor.

ff.    The Defendants violated 21 CFR § 312.32 because they failed to notify the FDA in a written IND safety report of the adverse experiences associated with the use of the prescription drugs that were serious and unexpected.

gg.    The Defendants violated 21 CFR § 314.80 by failing to report adverse drug experiences at quarterly intervals for three (3) years from the date of approval of the application, and then at annual intervals.

hh.    The Defendants violated 21 CFR § 314.80 by failing to provide periodic reports to the FDA containing (a) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval, (b) an Adverse Reaction Report for each adverse drug experience not

1    already reported under the post marketing 15-day Alert report, and/or

2    (c) a history of actions taken since the last report because of adverse

3    drug experiences (for example, labeling changes or studies initiated).

4        ii.    The Defendants violated 21 CFR § 314.80 by failing to

5    submit a copy of the published article from scientific or medical

6    journals along with one or more 15-day Alert reports based on

7    information from the scientific literature.

8    ### FIRST CAUSE OF ACTION

9    ### <u>Strict Products Liability</u>

10   ### <u>Defective Manufacturing</u>

11   68.    Plaintiff hereby incorporates by reference, as if fully set forth herein,

12   each and every allegation set forth in the preceding paragraphs and further alleges

13   as follows:

14   69.    The Defendants are the manufacturers, designers, distributors, sellers,

15   or suppliers of Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

16   70.    The Omniscan, Magnevist, ProHance, MultiHance, and Optimark

17   manufactured, designed, sold, distributed, supplied and/or placed in the stream of

18   commerce by Defendants, were defective in their manufacture and construction

19   when they left the hands of Defendants in that they deviated from product

20   specifications, posing a serious risk of injury and death.

21   71.    As a direct and proximate result of Plaintiff being administered

22   Omniscan, Magnevist, ProHance, MultiHance,  and Optimark as manufactured,

23   designed, sold, supplied and introduced into the stream of commerce by

24   Defendants, Plaintiff has suffered serious physical injury, harm, damages and

25   economic loss and will continue to suffer such harm, damages and economic loss

26   in the future.

27   72.    The acts, conduct and omissions of Defendants as alleged herein were

28   willful and malicious and were done with a conscious disregard for the rights of

COMPLAINT AND JURY DEMAND

1   Plaintiff and other users of Omniscan, Magnevist, ProHance, MultiHance, and

2   Optimark and for the primary purpose of increasing Defendants' profits from the

3   sale and distribution of Omniscan, Magnevist, ProHance, MultiHance, and

4   Optimark.

5       73.   As a direct and proximate result of Defendants' actions as alleged

6   herein, Plaintiff has suffered injuries, damages and losses as set forth in this

7   complaint.

8       74.   Defendants' willful, malicious, outrageous and unconscionable

9   conduct warrants an award of exemplary and punitive damages against all

10  Defendants in an amount to be determined at a trial of this action.

11                      **SECOND CAUSE OF ACTION**

12                      <u>**Strict Products Liability**</u>

13                      <u>**Design Defect**</u>

14      75.   Plaintiff hereby incorporates by reference, as if fully set forth herein,

15  each and every allegation set forth in the preceding paragraphs and further alleges

16  as follows:

17      76.   The Defendants are the manufacturers, designers, distributors, sellers,

18  or suppliers of Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

19      77.   The Omniscan, Magnevist, ProHance, MultiHance, and Optimark

20  manufactured, designed, sold, distributed, supplied and/or placed in the stream of

21  commerce by Defendants, were defective in design or formulation in that, when

22  they left the hands of the Defendants, the foreseeable risks of the products

23  exceeded the benefits associated with their design or formulation, or they were

24  more dangerous than an ordinary consumer would expect.

25      78.   The foreseeable risks associated with the design or formulation of

26  Omniscan, Magnevist, ProHance, MultiHance, and Optimark, include, but are not

27  limited to, the fact that the design or formulation of Omniscan, Magnevist,

28  ProHance, MultiHance, and Optimark is more dangerous than a reasonably prudent

1   consumer would expect when used in an intended or reasonably foreseeable

2   manner.

3       79.    As a direct and proximate result of Plaintiff being administered

4   Omniscan, Magnevist, ProHance, MultiHance, and Optimark as manufactured,

5   designed, sold, supplied, marketed and introduced into the stream of commerce by

6   Defendants, Plaintiff has suffered serious physical injury, harm, damages and

7   economic loss and will continue to suffer such harm, damages and economic loss

8   in the future.

9       80.    The acts, conduct and omissions of Defendants as alleged herein were

10  willful and malicious and were done with a conscious disregard for the rights of

11  Plaintiff and other users of Omniscan, Magnevist, ProHance, MultiHance, and

12  Optimark and for the primary purpose of increasing Defendants' profits from the

13  sale and distribution of Omniscan, Magnevist, ProHance, MultiHance, and

14  Optimark.

15      81.    As a direct and proximate result of Defendants' actions as alleged

16  herein, Plaintiff has suffered injuries, damages and losses as set forth in this

17  complaint.

18      82.    Defendants' willful, malicious, outrageous and unconscionable

19  conduct warrants an award of exemplary and punitive damages against all

20  Defendants in an amount to be determined at a trial of this action.

21                      **THIRD CAUSE OF ACTION**

22                      <u>**Strict Products Liability**</u>

23                  <u>**Defect Due to Inadequate Warning**</u>

24      83.    Plaintiff hereby incorporates by reference, as if fully set forth herein,

25  each and every allegation set forth in the preceding paragraphs and further alleges

26  as follows:

27      84.    The Defendants are the manufacturers, designers, distributors, sellers,

28  or suppliers of Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

COMPLAINT AND JURY DEMAND

85.    The Omniscan, Magnevist, ProHance, MultiHance, and Optimark manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective due to inadequate warning or instruction because Defendants knew, or should have known, that these products created significant risks of serious bodily harm and death to consumers, and they failed to adequately warn consumers and/or their health care providers of such risks.

86.    The Omniscan, Magnevist, ProHance, MultiHance, and Optimark manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants, were defective due to inadequate post-marketing warning or instruction because, after Defendants knew, or should have known, of the risk of serious bodily harm and death from the administration of Omniscan, Magnevist, ProHance, MultiHance, and Optimark, Defendants failed to provide an adequate warning to consumers and/or their health care providers of the products, knowing the products could cause serious injury and death.

87.    As a direct and proximate result of Plaintiff being administered Omniscan, Magnevist, ProHance, MultiHance, and Optimark as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, Plaintiff has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

88.    The acts, conduct and omissions of Defendants as alleged herein were willful and malicious and were done with a conscious disregard for the rights of Plaintiff and other users of Omniscan, Magnevist, ProHance, MultiHance, and Optimark and for the primary purpose of increasing Defendants' profits from the sale and distribution of Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

89.    As a direct and proximate result of Defendants' actions as alleged herein, Plaintiff has suffered injuries, damages and losses as set forth in this complaint.

90.    Defendant's willful, malicious, outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against all Defendants in an amount to be determined at a trial of this action.

## FOURTH CAUSE OF ACTION

### Strict Products Liability

### Defect Due to Nonconformance with Representations

91.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

92.    The Defendants are the manufacturers, designers, distributors, sellers, or suppliers of Omniscan, Magnevist, ProHance, MultiHance, and Optimark and made representations regarding the character or quality of Omniscan, Magnevist, ProHance, MultiHance, and Optimark, including representations that Omniscan, Magnevist, ProHance, MultiHance, and Optimark were safe.

93.    The Omniscan, Magnevist, ProHance, MultiHance, and Optimark manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendants were defective in that, when they left the hands of Defendants, they did not conform to representations made by Defendants concerning the product.

94.    Plaintiff and/or his health care providers justifiably relied upon Defendants' representations regarding the Omniscan, Magnevist, ProHance, MultiHance, and Optimark at the time they were administered to him.

95.    As a direct and proximate result of Plaintiff being administered Omniscan, Magnevist, ProHance, MultiHance, and Optimark and the reliance on Defendants' representations regarding the character and quality of Omniscan,

1  Magnevist, ProHance, MultiHance, and Optimark, he has suffered serious physical
2  injury, harm, damages and economic loss and will continue to suffer such harm,
3  damages and economic loss in the future.

4      96.    The acts, conduct and omissions of Defendants as alleged herein were
5  willful and malicious and were done with a conscious disregard for the rights of
6  Plaintiff and other users of Omniscan, Magnevist, ProHance, MultiHance, and
7  Optimark and for the primary purpose of increasing Defendants' profits from the
8  sale and distribution of Omniscan, Magnevist, ProHance, MultiHance, and
9  Optimark.

10      97.    As a direct and proximate result of Defendants' actions as alleged
11  herein, Plaintiff has suffered injuries, damages and losses as set forth in this
12  complaint.

13      98.    Defendants' willful, malicious, outrageous and unconscionable
14  conduct warrants an award of exemplary and punitive damages against all
15  Defendants in an amount to be determined at a trial of this action.

16                    **FIFTH CAUSE OF ACTION**
17                    **Strict Products Liability**
18            **Defect Due to Failure to Adequately Test**

19      99.    Plaintiff hereby incorporates by reference, as if fully set forth herein,
20  each and every allegation set forth in the preceding paragraphs and further alleges
21  as follows:

22      100.    The Defendants are the manufacturers, designers, distributors, sellers,
23  or suppliers of Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

24      101.    Defendants advised consumers and the medical community that
25  Omniscan, Magnevist, ProHance, MultiHance, and Optimark were safe for use.
26  Defendants failed to adequately test Omniscan, Magnevist, ProHance, MultiHance,
27  and Optimark with respect to their use by consumers with renal insufficiency.

28

102.   Had Defendants adequately tested the safety of Omniscan, Magnevist, ProHance, MultiHance, and Optimark for use by consumers with renal insufficiency and disclosed those results to the medical community or the public, Plaintiff would not have been administered Omniscan, Magnevist, ProHance, MultiHance, or Optimark.

103.   As a direct and proximate result of Defendants' failure to adequately test the safety of Omniscan, Magnevist, ProHance, MultiHance, and Optimark, and as a direct and proximate result of Plaintiff being administered Omniscan, Magnevist, ProHance, MultiHance, and Optimark as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendants, Plaintiff has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

104.   The acts, conduct and omissions of Defendants as alleged herein were willful and malicious and were done with a conscious disregard for the rights of Plaintiff and other users of Omniscan, Magnevist, ProHance, MultiHance, and Optimark and for the primary purpose of increasing Defendants' profits from the sale and distribution of Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

105.   As a direct and proximate result of Defendants' actions as alleged herein, Plaintiff has suffered injuries, damages and losses as set forth in this complaint.

106.   Defendants' willful, malicious, outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against all Defendants in an amount to be determined at a trial of this action.

# SIXTH CAUSE OF ACTION

## Strict Liability in Tort

107.  Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

108.  Defendants used and controlled toxic gadolinium for injection in humans.

109.  Gadolinium is highly toxic, inherently dangerous, and ultra-hazardous to humans.

110.  Defendants allowed and directed that toxic gadolinium be used and injected in humans.

111.  As a direct and proximate result of Defendants' use and control of toxic gadolinium, toxic gadolinium was injected and released into the body of Plaintiff, and he has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm.

112.  Defendants are strictly liable for Plaintiff's injuries, damages and losses.

113.  The acts, conduct and omissions of Defendants as alleged herein were willful and malicious and were done with a conscious disregard for the rights of Plaintiff and other users of Omniscan, Magnevist, ProHance, MultiHance, and Optimark and for the primary purpose of increasing Defendants' profits from the sale and distribution of Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

114.  As a direct and proximate result of Defendants' actions as alleged herein, Plaintiff has suffered injuries, damages and losses as set forth in this complaint.

COMPLAINT AND JURY DEMAND

28

115.   Defendants' willful, malicious, outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against all Defendants in an amount to be determined at a trial of this action.

### SEVENTH CAUSE OF ACTION

#### Negligence - Highest Possible Duty of Care

116.   Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

117.   Because gadolinium is highly toxic and inherently dangerous and ultra-hazardous to humans, the Defendants had a duty to exercise the highest possible degree of care in the design, manufacture, testing, sale and/or distribution of their products, Omniscan, Magnevist, ProHance, MultiHance, and Optimark respectively, into the stream of commerce, including the duty to assure that their products did not pose a significantly increased risk of bodily harm and adverse events.

118.   Defendants failed to exercise the highest possible degree of care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, and distribution of Omniscan, Magnevist, ProHance, MultiHance, and Optimark into interstate commerce in that Defendants knew, or should have known, that their products were inherently dangerous and ultra-hazardous to humans and caused such significant bodily harm or death and was not safe for administration to consumers.

119.   Defendants also failed to exercise the highest possible degree of care in the labeling of Omniscan, Magnevist, ProHance, MultiHance, and Optimark and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

COMPLAINT AND JURY DEMAND

120.   Despite the fact that Defendants knew, or should have known, that Omniscan, Magnevist, ProHance, MultiHance, and Optimark posed a serious risk of bodily harm to consumers and were inherently dangerous and ultra-hazardous to humans and particularly those with renal insufficiency, Defendants continued to manufacture and market Omniscan, Magnevist, ProHance, MultiHance, and Optimark for administration to magnetic resonance imaging and arteriography patients with renal insufficiency.

121.   Defendants knew, or should have known, that consumers such as Plaintiff would foreseeably suffer injury as a result of Defendants' failure to exercise the highest possible degree of care as described above.

122.   As a direct and proximate result of Defendants' negligence, Plaintiff has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

123.   The acts, conduct and omissions of Defendants as alleged herein were willful and malicious and were done with a conscious disregard for the rights of Plaintiff and other users of Omniscan, Magnevist, ProHance, MultiHance, and Optimark and for the primary purpose of increasing Defendants' profits from the sale and distribution of Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

124.   As a direct and proximate result of Defendants' actions as alleged herein, Plaintiff has suffered injuries, damages and losses as set forth in this complaint.

125.   Defendants' willful, malicious, outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against all Defendants in an amount to be determined at a trial of this action.

# EIGHTH CAUSE OF ACTION

## Negligence

126.  Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

127.  The Defendants had a duty to exercise reasonable care in the design, manufacture, testing, sale and/or distribution of their products, Omniscan, Magnevist, ProHance, MultiHance, and Optimark respectively, into the stream of commerce, including a duty to assure that their products did not pose a significantly increased risk of bodily harm and adverse events.

128.  Defendants failed to exercise reasonable care in the design, formulation, manufacture, sale, testing, quality assurance, quality control, labeling, marketing, and distribution of Omniscan, Magnevist, ProHance, MultiHance, and Optimark into interstate commerce in that Defendants knew, or should have known, that their products caused such significant bodily harm or death and were not safe for administration to consumers.

129.  Defendants also failed to exercise ordinary care in the labeling of Omniscan, Magnevist, ProHance, MultiHance, and Optimark and failed to issue to consumers and/or their health care providers adequate warnings of the risk of serious bodily injury or death due to the use of Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

130.  Despite the fact that Defendants knew, or should have known, that Omniscan, Magnevist, ProHance, MultiHance, and Optimark posed a serious risk of bodily harm to consumers, Defendants continued to manufacture and market Omniscan, Magnevist, ProHance, MultiHance, and Optimark for administration to magnetic resonance imaging and arteriography patients with renal insufficiency.

131.  Defendants knew, or should have known, that consumers, such as Plaintiff, would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

132.  As a direct and proximate result of Defendants' negligence, Plaintiff has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

133.  The acts, conduct and omissions of Defendants as alleged herein were willful and malicious and were done with a conscious disregard for the rights of Plaintiff and other users of Omniscan, Magnevist, ProHance, MultiHance, and Optimark and for the primary purpose of increasing Defendants' profits from the sale and distribution of Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

134.  As a direct and proximate result of Defendants' actions as alleged herein, Plaintiff has suffered injuries, damages and losses as set forth in this complaint.

135.  Defendants' willful, malicious, outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against all Defendants in an amount to be determined at a trial of this action.

## NINTH CAUSE OF ACTION
### Breach of Express Warranty

136.  Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

137.  The Defendants expressly warranted that their products, Omniscan, Magnevist, ProHance, MultiHance, and Optimark respectively, were safe and effective paramagnetic contrast agents for magnetic resonance imaging.

138.  The Omniscan, Magnevist, ProHance, MultiHance, and Optimark manufactured and sold by Defendants did not conform to these express

COMPLAINT AND JURY DEMAND

32

1  representations because they caused serious injury to consumers when
2  administered in recommended dosages.

3      139.  As a direct and proximate result of Defendants' breach of warranty,
4  Plaintiff has suffered serious physical injury, harm, damages and economic loss
5  and will continue to suffer such harm, damages and economic loss in the future.

6              **TENTH CAUSE OF ACTION**
7              **Breach of Implied Warranty**

8      140.  Plaintiff hereby incorporates by reference, as if fully set forth herein,
9  each and every allegation set forth in the preceding paragraphs and further alleges
10 as follows:

11     141.  At the time the Defendants designed, manufactured, marketed, sold,
12 and distributed Omniscan, Magnevist, ProHance, MultiHance, and Optimark
13 respectively, Defendants knew of the use for which Omniscan, Magnevist,
14 ProHance, MultiHance, and Optimark were intended and impliedly warranted their
15 products to be of merchantable quality and safe and fit for such use.

16     142.  Plaintiff reasonably relied upon the skill and judgment of Defendants
17 as to whether Omniscan, Magnevist, ProHance, MultiHance, and Optimark were of
18 merchantable quality and safe and fit for their intended use and upon Defendants'
19 implied warranty as to such matters.

20     143.  Contrary to such implied warranty, Omniscan, Magnevist, ProHance,
21 MultiHance, and Optimark were not of merchantable quality or safe or fit for their
22 intended use because the products were unreasonably dangerous as described
23 above.

24     144.  As a direct and proximate result of Defendants' breach of warranty,
25 Plaintiff has suffered serious physical injury, harm, damages and economic loss
26 and will continue to suffer such harm, damages and economic loss in the future.

27
28

## ELEVENTH CAUSE OF ACTION

### Fraud/Misrepresentation

145.   Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

146.   Defendants knowingly and intentionally made material and false and misleading representations to Plaintiff, his physician and to the public that Omniscan, Magnevist, ProHance, MultiHance, and Optimark were safe for use and that Defendants' labeling, marketing, and promotion fully described all known risks of the products.

147.   Defendants' representations were in fact false, as Omniscan, Magnevist, ProHance, MultiHance, and Optimark are not safe for use and their labeling, marketing and promotion did not fully describe all known risks of the products.

148.   Defendants had actual knowledge based upon studies, published reports and clinical experience that their products created an unreasonable risk of serious bodily injury and death to consumers, and specifically consumers with renal insufficiency, or should have known such information.

149.   Defendants knowingly and intentionally omitted this information in their product labeling, marketing, and promotion and instead, labeled, promoted, and marketed their products as safe for use in order to avoid monetary losses and in order to sustain profits in their sales to consumers.

150.   When Defendants made these representations that Omniscan, Magnevist, ProHance, MultiHance, and Optimark were safe for use, they knowingly and intentionally concealed and withheld from Plaintiff, his physician and the public the true facts that Omniscan, Magnevist, ProHance, MultiHance, and Optimark were not safe for use in consumers with renal insufficiency.

151.   Defendants had a duty to disclose to Plaintiff, his physician and the public that Omniscan, Magnevist, ProHance, MultiHance, and Optimark were not safe for use in patients with renal insufficiency in that they caused NSF/NFD because they had superior knowledge of these facts that were material to Plaintiff and his physician's decision to use Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

152.   Plaintiff and his physician reasonably and justifiably relied on the Defendants' concealment of the true facts and reasonably and justifiably relied upon Defendants' representations to Plaintiff and/or his health care providers that Omniscan, Magnevist, ProHance, MultiHance, and Optimark were safe for human consumption and/or use and that Defendants' labeling, marketing, and promotion fully described all known risks of the product.

153.   Had Plaintiff and his physician known of Defendants' concealment of the true facts that Omniscan, Magnevist, ProHance, MultiHance, and Optimark were not safe for human use, Plaintiff would not have been administered Omniscan or Optimark.

154.   As a direct and proximate result of Defendants' misrepresentations and concealment, Plaintiff was administered Omniscan, Magnevist, ProHance, MultiHance, and Optimark and has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

155.   The acts, conduct and omissions of Defendants as alleged herein were willful and malicious and were done with a conscious disregard for the rights of Plaintiff and other users of Omniscan, Magnevist, ProHance, MultiHance, and Optimark and for the primary purpose of increasing Defendants' profits from the sale and distribution of Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

COMPLAINT AND JURY DEMAND

35

156.    As a direct and proximate result of Defendants' actions as alleged herein, Plaintiff has suffered injuries, damages and losses as set forth in this complaint.

157.    Defendants' willful, malicious, outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against all Defendants in an amount to be determined at a trial of this action.

## TWELFTH CAUSE OF ACTION

### Negligent Misrepresentation

158.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

159.    Defendants, in the course of their business profession, supplied Plaintiff and his physician with false information for guidance in their decision to use Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

160.    The false information supplied by Defendants to Plaintiff and his physician was that Omniscan, Magnevist, ProHance, MultiHance, and Optimark were safe and would not adversely affect Plaintiff's health.

161.    In supplying the false information, Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff and his physician.

162.    The false information obtained and communicated by Defendants to Plaintiff and his physician was material and they justifiably relied in good faith on the information to their detriment.

163.    As a result of the negligent misrepresentations of Defendants, Plaintiff suffered injuries, damages and losses as alleged herein.

164.    The acts, conduct and omissions of Defendants as alleged herein were willful and malicious and were done with a conscious disregard for the rights of Plaintiff and other users of Omniscan, Magnevist, ProHance, MultiHance, and

COMPLAINT AND JURY DEMAND

1   Optimark and for the primary purpose of increasing Defendants' profits from the
2   sale and distribution of Omniscan, Magnevist, ProHance, MultiHance, and
3   Optimark.

4       165.   As a direct and proximate result of Defendants' actions as alleged
5   herein, Plaintiff has suffered injuries, damages and losses as set forth in this
6   complaint.

7       166.   Defendants' willful, malicious, outrageous and unconscionable
8   conduct warrants an award of exemplary and punitive damages against all
9   Defendants in an amount to be determined at a trial of this action.

10              **THIRTEENTH CAUSE OF ACTION**
11        **Violation of Business & Professions Code § 17200**

12      167.   Plaintiff hereby incorporates by reference, as if fully set forth herein,
13   each and every allegation set forth in the preceding paragraphs and further alleges
14   as follows:

15      168.   Plaintiff brings this cause of action pursuant to California Business &
16   Professions Code § 17204, in an individual capacity, and not on behalf of the
17   general public.  Pursuant to § 17204, Plaintiff is a person who has suffered injury
18   and lost money as a result of Defendants' actions alleged herein.

19      169.   California Business & Professions Code § 17200 provides that unfair
20   competition shall mean and include "all unlawful, unfair or fraudulent business
21   practices and unfair, deceptive, untrue or misleading advertising."

22      170.   The acts and practices described above were and are likely to mislead
23   the general public and, therefore, constitute unfair business practices within the
24   meaning of California Business & Professions Code § 17200.  The acts of untrue
25   and misleading advertising set forth above are incorporated by reference herein and
26   are, by definition, violations of California Business & Professions Code § 17200.
27   This conduct includes, but is not limited to:

28

a.    Representing to Plaintiff, Plaintiff's physicians and the general public that Omniscan, Magnevist, ProHance, MultiHance, and Optimark were safe, fit and effective for human consumption, knowing that said representations were false, and concealing from Plaintiff, Plaintiff's physicians and the general public that Omniscan, Magnevist, ProHance, MultiHance, and Optimark had a serious propensity to cause injuries to users and specifically to those users who had renal insufficiency;

b.    Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that the use of Omniscan, Magnevist, ProHance, MultiHance, and Optimark were safe for human use, including use by persons with renal insufficiency, even though Defendants knew this to be false and even though Defendants had no reasonable grounds to believe it to be true;

c.    Purposely downplaying and understating the health hazards and risks associated with Omniscan, Magnevist, ProHance, MultiHance, and Optimark; and

d.    Issuing promotional literature deceiving potential users of Omniscan, Magnevist, ProHance, MultiHance, and Optimark by concealing material relevant information regarding the safety of Omniscan, Magnevist, ProHance, MultiHance, and Optimark.

171.    These practices constitute unlawful, unfair and fraudulent business acts or practices within the meaning of California Business & Professions Code § 17200, as well as unfair, deceptive, untrue and misleading advertising as prohibited by California Business & Professions Code § 17500.

172.    The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described herein.

173.    As a result of the conduct set forth herein, Defendants have been, and will continue to be, unjustly enriched. Specifically, upon information and belief,

1  Defendants have been unjustly enriched by receipt of millions of dollars in ill-
2  gotten gains from the sale and prescription of Omniscan, Magnevist, ProHance,
3  MultiHance, and Optimark in California, sold in large part as a result of the acts
4  and omissions described herein.

5      174.   Because of fraudulent misrepresentations made by Defendants as set
6  forth herein and the inherently unfair practice of committing a fraud against the
7  public by intentionally misrepresenting and concealing material information, the
8  acts of Defendants described herein constitute unfair or fraudulent business
9  practices.

10      175.   Plaintiff, pursuant to California Business & Professions Code §
11  17203, seeks an order from this Court compelling Defendants to provide restitution
12  and to disgorge the monies collected and profits realized by Defendants as a result
13  of their unfair business practices and injunctive relief calling for Defendants to
14  cease unfair business practices in the future.

15      176.   The acts, conduct and omissions of Defendants as alleged herein were
16  willful and malicious and were done with a conscious disregard for the rights of
17  Plaintiff and other users of Omniscan, Magnevist, ProHance, MultiHance, and
18  Optimark and for the primary purpose of increasing Defendants' profits from the
19  sale and distribution of Omniscan, Magnevist, ProHance, MultiHance, and
20  Optimark.

21      177.   As a direct and proximate result of Defendants' actions as alleged
22  herein, Plaintiff has suffered injuries, damages and losses as set forth in this
23  complaint.

24      178.   Defendants' willful, malicious, outrageous and unconscionable
25  conduct warrants an award of exemplary and punitive damages against all
26  Defendants in an amount to be determined at a trial of this action.

27

28

COMPLAINT AND JURY DEMAND

## FOURTEENTH CAUSE OF ACTION

### Violation of Business & Professions Code § 17500

179.   Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

180.   Plaintiff brings this cause of action pursuant to California Business & Professions Code § 17500 in an individual capacity and not on behalf of the general public.  Pursuant to § 17535, Plaintiff is a person who has suffered injury and lost money as a result of Defendants' actions alleged herein.

181.   California Business & Professions Code § 17500 provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

182.   At all times herein mentioned Defendants have committed acts of disseminating untrue and misleading statements as defined by California Business & Professions Code § 17500 by engaging in the following acts and practices with intent to induce members of the public to purchase and use Omniscan, Magnevist, ProHance, MultiHance, and Optimark:

a.     Representing to Plaintiff, Plaintiff's physicians and the general public that Omniscan, Magnevist, ProHance, MultiHance, and Optimark were safe, fit and effective for human consumption, knowing that said representations were false, and concealing from Plaintiff, Plaintiff's physicians and the general public that Omniscan, Magnevist, ProHance, MultiHance, and Optimark had a serious propensity to cause injuries to users and specifically to those users who had renal insufficiency;

b.     Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that the use of Omniscan, Magnevist, ProHance, MultiHance, and Optimark were safe for human use,

1  including use by persons with renal insufficiency, even though Defendants knew

2  this to be false and even though Defendants had no reasonable grounds to believe it

3  to be true;

4        c.    Purposely downplaying and understating the health hazards and risks

5  associated with Omniscan, Magnevist, ProHance, MultiHance, and Optimark; and

6        d.    Issuing promotional literature deceiving potential users of Omniscan

7  and Optimark by concealing material relevant information regarding the safety of

8  Omniscan and Optimark.

9      183.   The foregoing practices constitute false and misleading advertising

10  within the meaning of California Business & Professions Code § 17500.

11      184.   The acts of untrue and misleading statements by Defendants described

12  herein present a continuing threat to members of the public in that the acts alleged

13  herein are continuous and ongoing, and the public will continue to suffer the harm

14  alleged herein.

15      185.   As a result of the conduct set forth herein, Defendants have been, and

16  will continue to be, unjustly enriched.  Specifically, upon information and belief,

17  Defendants have been unjustly enriched by receipt of millions of dollars in ill-

18  gotten gains from the sale of Omniscan, Magnevist, ProHance, MultiHance, and

19  Optimark in California, sold in large part as a result of the acts and omissions

20  described herein.

21      186.   Pursuant to California Business & Professions Code § 17535, Plaintiff

22  seeks an order from this Court compelling Defendants to provide restitution and

23  disgorge the monies collected and profits realized by Defendants as a result of their

24  unfair business practices and injunctive relief calling for Defendant to cease unfair

25  business practices in the future.

26      187.   Plaintiff seeks the imposition of a constructive trust over and

27  restitution and disgorgement of the monies collected and profits realized by

28

COMPLAINT AND JURY DEMAND

1    Defendants and for Defendants to cease such false and misleading advertising in

2    the future.

3        188.   The acts, conduct and omissions of Defendants as alleged herein were

4    willful and malicious and were done with a conscious disregard for the rights of

5    Plaintiff and other users of Omniscan, Magnevist, ProHance, MultiHance, and

6    Optimark and for the primary purpose of increasing Defendants' profits from the

7    sale and distribution of Omniscan, Magnevist, ProHance, MultiHance, and

8    Optimark.

9        189.   As a direct and proximate result of Defendants' actions as alleged

10   herein, Plaintiff has suffered injuries, damages and losses as set forth in this

11   complaint.

12       190.   Defendants' willful, malicious, outrageous and unconscionable

13   conduct warrants an award of exemplary and punitive damages against all

14   Defendants in an amount to be determined at a trial of this action.

15       **WHEREFORE**, Plaintiff prays for relief as follows:

16   1.    Compensatory damages in excess of the jurisdictional amount,

17       including, but not limited to pain, suffering, emotional distress, loss of

18       enjoyment of life, and other non-economic damages in an amount to be

19       determined at trial of this action;

20   2.    Medical expenses and other economic damages in an amount to be

21       determined at trial of this action;

22   3.    Punitive damages in an amount to be determined upon proof at trial;

23   4.    Restitution, disgorgement of profits, and other injunctive and

24       equitable relief;

25   5.    Attorneys' fees, expenses, and costs of this action; and

26   6.    Such further relief as this Court deems necessary, just, and proper.

27

28

COMPLAINT AND JURY DEMAND

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: May 20, 2008

KABATECK BROWN KELLNER LLP

By: _____
Richard L. Kellner
Counsel for Plaintiff

BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
JOHN M. RESTAINO,

COMPLAINT AND JURY DEMAND

43

# E-filing

## CIVIL COVER SHEET

**PVT**



JS 44 (Rev. 12/07) (cand rev 1-16-08)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

### I. (a) PLAINTIFFS
DAVID HILARY

### DEFENDANTS
GENERAL ELECTRIC COMPANY (See attachment)

**(b)** County of Residence of First Listed Plaintiff  Santa Cruz, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, CA 90017
Tel; 213 217-5000

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity (Indicate Citizenship of Parties in Item III) |

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 900 Appeal of Fee |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Determination |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | Under Equal Access |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | to Justice |
| | Other | | Alien Detainee | | ☐ 950 Constitutionality of |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration Actions | | State Statutes |

### V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC Sec. 1332
Brief description of cause:
Strict Prod. Liability; Negligence; Breach of Express Warranty; Violation of Bus. & Prof. Code Sec. 17200, 17500

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

### IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
☐ SAN FRANCISCO/OAKLAND  ☒ SAN JOSE

DATE
May 20, 2008

SIGNATURE OF ATTORNEY OF RECORD

# ATTACHMENT

GE HEALTHCARE, INC.; GE HEALTHCARE AS; BAYER HEALTHCARE
PHARMACEUTICALS, INC. f/k/a/ BERLEX, INC. f/k/a BERLEX LABORATORIES,
INC.; BAYER SCHERING PHARMA AG; BAYER AG; MALLINCKRODT, INC.;
BRACCO DIAGNOSTICS INC; BRACCO RESEARCH USA, INC.; ALTANA
PHARMA AG; and NYCOMED INTERNATIONAL MANAGEMENT GmbH.